UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| D.L., a Minor Child, by and through Her Parents and Next Friends, DUC AND ANH LE, <br><br>PLAINTIFFS <br><br>vs. <br><br>OMAHA PUBLIC SCHOOLS <br><br><br>DEFENDANT | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE No. _____ <br><br><br><br><br><br><br><br>COMPLAINT |

I.  INTRODUCTION

1. This action arises under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). This action seeks review of the decision of the special education administrative due process Hearing Officer issued on April 3, 2025.

2. D.L. is an 8-year-old minor child, and she brings this action by and through her parents, Duc and Anh Le.

3. D.L. is a student in Omaha Public Schools ("OPS"), a public school district.

4. D.L. completed the second grade in May 2025.

5. D.L. has been verified as a child with autism by OPS and has an Individualized Education Program ("IEP") with the school district.

6. Starting in August 2023, D.L.'s IEP placement was an Alternative Curriculum Program ("ACP") classroom at a school other than the school for which she is zoned.

1

7. Then, during an IEP meeting on October 9, 2023, D.L.'s IEP team changed her placement, deciding explicitly that her educational placement should consist of IEP services at her home school of Saddlebrook Elementary. Her IEP team specifically rejected D.L.'s continued placement in the ACP classroom.

8. The parties' last agreed-upon educational placement for D.L. is the placement designated by OPS in D.L.'s October 9, 2023 IEP: services at her "home school," Saddlebrook Elementary.

9. However, OPS administration adopted the position four days after the October 9, 2023 IEP meeting that the educational placement her IEP team had decided upon had been a mistake. Since that time, the parties have disputed D.L.'s IEP placement and the specifics of the IEP behavioral supports and instruction she should receive.

10. Following the State Hearing Officer's Order for Stay-Put Placement on January 10, 2024, D.L. has been attending and receiving IEP services in the special education and general education classrooms at Saddlebrook Elementary School, the public school for which she is zoned.

11. Because Plaintiffs are now seeking judicial review of the Hearing Officer's April 3, 2025 decision on the merits of this case—thereby continuing the proceedings pursuant to the IDEA "stay put" provision, 20 U.S.C. 1415(j)—D.L.'s placement receiving IEP services in the special education and general education classrooms at Saddlebrook Elementary School should be maintained throughout the pendency of litigation.

12. OPS disputes that D.L.'s "stay put" placement is Saddlebrook Elementary School receiving IEP services in the special education and general education classrooms.

13. OPS has denied D.L. a free appropriate public education ("FAPE") to D.L. in the least

restrictive environment ("LRE"), and Plaintiffs seek compensatory education services for D.L. and a FAPE to be provided to her in the special education classroom, with some time in the general education environment with nondisabled peers, at her home school of Saddlebrook Elementary.

## II. PARTIES

14. D.L. is an 8-year-old student who resides with her parents within the boundaries of the Omaha Public Schools district. D.L.'s initials are used for privacy reasons because she is a minor.

15. Duc and Anh Le are D.L.'s parents. They reside with D.L. in Omaha, Nebraska, within the boundaries of the Omaha Public Schools district.

16. D.L. qualifies for special education and related services under the eligibility category of autism. She is a "child with a disability" as defined in the IDEA, 20 U.S.C. § 1401, and its implementing regulations. 34 C.F.R. § 300.8.

17. OPS is a public school district and is responsible for the administration of education for the public schools within its boundaries. OPS is a "local education agency" within the meaning of 20 U.S.C. § 1401(9).

18. OPS is therefore required by federal and Nebraska law to comply with the IDEA and to provide a FAPE in the least restrictive environment to D.L.

## III. JURISDICTION AND VENUE

19. This is an action for Judicial Review pursuant to 20 U.S.C. § 1415(i)(2)(A) and 92 Neb. Admin Code. § 55-009. As such, this is a Complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.

20. Jurisdiction is based on 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. Jurisdiction is also based on the IDEA, 20 U.S.C. § 1415(i)(3).

21. This Court has jurisdiction to issue a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

22. Plaintiffs have fully exhausted administrative remedies as required by the IDEA, 20 U.S.C. § 1415(f) and (g).

23. This civil action is timely filed under 20 U.S.C. §1415(i)(2)(B), as the decision of the Hearing Officer was rendered on April 3, 2025, and this action is filed within 90 days of that decision.

24. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because OPS transacts business, is found, and has agents in this District, and because the events and omissions giving rise to the Plaintiffs' claim occurred and continue to occur in this District.

## IV. STANDARD OF REVIEW

25. With respect to the decision of the state hearing officer in an IDEA administrative due process case, "the aggrieved party may seek review of that decision by bringing an action in federal district court, which reviews the administrative record and any additional evidence requested by the parties. 20 U.S.C. § 1415(i)(2). The district court must make its decision independently, based on a preponderance of the evidence, whether the IDEA was violated." *B.S. v. Anoka Hennepin Pub. Schs.*, 799 F.3d 1217, 1220 (8th Cir. 2015) (citing *Pachl v. Seagren*, 453 F.3d 1064, 1068 (8th Cir. 2006)).

## V. PROCEDURAL HISTORY

26. Plaintiffs Duc and Anh Le filed a due process petition with the Nebraska Department of

Education ("NDE") on November 30, 2023, against OPS pursuant to 20 U.S.C. § 1415 and 92 Neb. Admin. Code § 55. The case was assigned Case No.23-36.

27. Plaintiffs alleged in their due process petition that OPS had denied D.L. a free appropriate public education ("FAPE") in the least restrictive environment ("LRE").

28. In their November 30, 2023 petition, Petitioners specifically invoked the IDEA's Maintenance of Current Educational Placement, or "stay-put," provision, 20 U.S.C. § 1415(j). Plaintiffs argued that D.L.'s educational placement decided upon by her IEP team on October 9, 2023—consisting of services in the special education and general education classrooms at her home school of Saddlebrook Elementary—should be maintained during the pendency of the proceedings.

29. Despite the Plaintiffs' filing of a due process petition and D.L.'s right to remain in her then-current educational placement during the pendency of the proceedings pursuant to 20 U.S.C. § 1415(j), OPS refused to provide educational services to D.L. in the special education and general education classrooms at her home school of Saddlebrook Elementary.

30. Plaintiffs filed a Motion for Enforcement of Stay-Put Placement on December 27, 2023.

31. On January 5, 2024, the Hearing Officer heard oral arguments from both parties on Plaintiffs' Motion for Enforcement of Stay-Put Placement and Defendant's Opposition to Plaintiffs' Motion. On or about January 10, 2024, the Hearing Officer issued an Order for Stay-Put Placement finding that pursuant to Student's October 9, 2023 IEP, "the last agreed-upon educational placement for the minor child [D.L.] is alternative curriculum instruction at her home school, Saddlebrook Elementary. IT IS THEREFORE

ORDERED that the minor child is entitled to attend this last agreed-upon placement as her 'stay-put' placement during the pendency of this proceeding."

32. Plaintiffs filed an Amended Petition on October 21, 2024, seeking "appropriate behavioral intervention services" as part of the compensatory education sought, and clarifying that D.L.'s appropriate educational placement in the LRE "consists of general and special education" at the public school closest to her home, Saddlebrook Elementary School.

33. Plaintiffs also filed a Supplemental Petition on October 21, 2024, alleging a further denial of FAPE by OPS due to its refusal to convene an IEP meeting for D.L. prior to the start of the 2024-2025 school year for the purpose of considering and potentially implementing some of the recommendations from a Spring 2024 independent educational evaluation paid for by OPS pursuant to 34 C.F.R. § 300.502.

34. A three-day administrative due process hearing was held on November 18 and 21, 2024, and on December 11, 2024.

35. A decision and order were issued by the Hearing Officer on April 3, 2025. The Hearing Officer ruled in favor of OPS on all issues, finding that D.L.'s parents did not meet their burden of proof on all issues raised.

36. Plaintiffs filed a Notice of Appeal with NDE on April 4, 2025, and now seek judicial review by this Court of the Hearing Officer's decision and order.

VI.     **FACTUAL ALLEGATIONS**

37. D.L. attended Kindergarten at Saddlebrook Elementary, which is her "home school," *i.e.*, the school for which she is zoned, for the 2022-2023 school year.

38. At Saddlebrook Elementary School, D.L.'s IEP placement included time in a general education classroom along with her nondisabled peers as well as time in a special education classroom.

39. In D.L.'s February 2023 IEP, OPS included a "Behavioral Assessment and Intervention Plan" in which OPS left blank multiple sections.

40. On April 25, 2023, D.L.'s IEP team convened and decided to change her placement to an Alternative Curriculum Program ("ACP") classroom beginning on August 16, 2023.

41. OPS again left blank multiple sections of the "Behavioral Assessment Intervention Plan" in D.L.'s April 2023 IEP. OPS later removed D.L.'s "Behavioral Assessment Intervention Plan" from her IEP altogether in October 2023.

42. According to OPS, a key element of the district's ACP "is a curriculum designed specifically for students with cognitive disabilities."

43. At the time of the April 25, 2023 IEP meeting for D.L., OPS had not evaluated her since November 2018, when she was 24 months old, and had never assessed D.L. as having a cognitive or intellectual disability.

44. D.L. began attending the ACP classroom at Prairie Wind Elementary School, another OPS public school, on or about August 16, 2023, at the start of her first grade year.

45. On at least two separate days between August 16 and September 1, 2023, D.L. was scratched on her face and neck by other students in the ACP classroom at Prairie Wind Elementary, and she appeared to Plaintiffs to be stressed and scared attending school there.

46. As a result, Plaintiffs stopped sending D.L. to school after September 1, 2023 and sent repeated requests to OPS personnel requesting another IEP meeting and a change in D.L.'s IEP placement.

47. Following numerous emails and pleas from Plaintiffs, on October 9, 2023, OPS finally reconvened D.L.'s IEP team and changed her placement again, this time back to the public school for which she is zoned within the OPS school district, Saddlebrook Elementary.

48. D.L.'s IEP team explicitly and purposefully made the physical location—Saddlebrook Elementary School—a part of her IEP educational placement. OPS stated in the Prior Written Notice of D.L.'s October 9, 2023 IEP that "[t]he IEP team determine [sic] to have [D.L.] continue with an alternate curriculum but to receive her services for this at her home school." Her home school was and is Saddlebrook Elementary. Further, OPS stated that the IEP team "rejected" "having [D.L.] continue to attend the ACP classroom at Prairie Wind." The team also "rejected" having [D.L.] attend "an ACP classroom at Oak Valley."

49. On October 13, 2023, OPS Special Education Director Kara Saldierna, who had not attended the October 9, 2023 IEP meeting, informed Plaintiffs that OPS would not permit Student to attend the IEP educational placement her IEP team had just decided was appropriate for her.

50. Plaintiffs filed a due process petition on November 30, 2023, and the assigned Hearing Officer entered an Order for Stay-Put Placement on or about January 10, 2024, finding that pursuant to Student's October 9, 2023 IEP, "the last agreed-upon educational placement for the minor child [D.L.] is alternative curriculum

instruction at her home school, Saddlebrook Elementary." OPS then resumed educational services to D.L. in the special education classroom and general education classroom at Saddlebrook Elementary in mid-January 2024.

51. In the Spring of 2024, OPS agreed to fund a Functional Behavioral Assessment ("FBA") as an Independent Educational Evaluation ("IEE") for D.L. This IEE, which included several recommendations, including a detailed Behavioral Intervention Plan ("BIP"), was completed on April 22, 2024.

52. On July 15, 2024, Plaintiff Duc Le asked Special Education Director Saldierna to convene an IEP meeting for D.L. in August for the team to consider and potentially implement the independent evaluator's recommendations in the IEE at the start of the 2024-2025 school year.

53. On July 19, 2024, Special Education Director Saldierna refused to convene an IEP meeting to consider the IEE.

54. D.L. has continued to receive special education services at Saddlebrook Elementary in special education and general education classrooms through the completion of her second grade year in May 2025.

## VII. THE LEGAL FRAMEWORK

### A. IDEA

55. As explained by the U.S. Supreme Court:

> The Individuals with Disabilities Education Act (IDEA or Act) offers States federal funds to assist in educating children with disabilities…. In exchange for the funds, a State pledges to comply with a number of statutory conditions. Among them, the State must provide a free appropriate public education—a FAPE, for short—to all eligible children. §1412(a)(1).
>
> A FAPE, as the Act defines it, includes both "special education" and "related services." §1401(9). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability"; "related

9

> services" are the support services "required to assist a child . . . to benefit from" that instruction. §§1401(26), (29). A State covered by the IDEA must provide a disabled child with such special education and related services "in conformity with the [child's] individualized education program," or IEP. §1401(9)(D).

*Endrew F. v. Douglas Cnty. Sch. Dist. Re-1*, 580 U.S. 386, 390-91 (2017) (citations omitted).

56. Further, according to the Court:

> The IEP is "the centerpiece of the statute's education delivery system for disabled children".... A comprehensive plan prepared by a child's "IEP Team" (which includes teachers, school officials, and the child's parents), an IEP must be drafted in compliance with a detailed set of procedures. §1414(d)(1)(B). (internal quotation marks omitted). These procedures emphasize collaboration among parents and educators and require careful consideration of the child's individual circumstances. §1414. The IEP is the means by which special education and related services are "tailored to the unique needs" of a particular child. *Rowley*, 458 U. S., at 181, 102 S. Ct. 3034, 73 L. Ed. 2d 690.

*Endrew F.*, 580 U.S. at 391 (citation omitted).

57. The IDEA defines an IEP as "a written statement for each child with a disability that is developed, reviewed, and revised in a meeting…." 34 C.F.R. § 300.320(a).

58. The IDEA defines a free appropriate public education ("FAPE") as "special education and related services that… are provided at public expense, under public supervision and direction, and without charge… [and] are provided in conformity with an individualized education program (IEP)…." 34 C.F.R. § 300.17.

59. The IDEA also provides that students with disabilities should be educated in the "Least Restrictive Environment":

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a

> child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).

60. The "stay put" provision of the IDEA is automatic upon the filing of an IDEA due process petition:

> **(j)Maintenance of current educational placement**
>
> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child....

20 U.S.C. § 1415(j).

61. The IDEA also provides that "[a] parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public education agency, subject to" specified conditions, and the IEE "must be considered" by the school district. 34 C.F.R. § 300.502(b)(1), (c)(1).

## VIII.   CLAIM FOR RELIEF

**Federal IDEA Claim: Reversal of Hearing Officer's Decision**

62. Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

63. The Hearing Officer's decision on April 3, 2025 is not supported by the evidence in the administrative record. The decision was not based on careful consideration of all of the evidence in the administrative record and demonstrates a misapplication of special education law.

64. Pursuant to 20 U.S.C. § 1415(i)(2), Plaintiffs seek review judicial review and a reversal of the Hearing Officer's decision.

65. The Hearing Officer's decision in this case misapplies the IDEA. Specifically, The Eighth Circuit has ruled that "an IEP may be set aside on the grounds of a FAPE violation 'if procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits.'" *Park Hill Sch. Dist. v. Dass*, 655 F.3d 762, 766 (8th Cir. 2011) (quoting *Lathrop R-II Sch. Dist. v. Gray*, 611 F.3d 419, 424 (8th Cir. 2010)).

66. The administrative record in this case is rife with OPS's violations of the procedural and substantive rights of D.L. and her parents under the IDEA. These procedural violations were numerous and compromised D.L.'s right to an appropriate education in the least restrictive environment, seriously hampered her parents' opportunity to participate in the process of formulating her IEPs, and caused a deprivation of educational benefits for D.L.

67. However, the Hearing Officer's decision found that OPS did not violate the IDEA by including a "Behavioral Intervention and Support Plan" in D.L's two Spring 2023 IEPs with multiple sections left blank.

68. Further, OPS did not convene an IEP meeting for D.L. for 38 days once Plaintiffs began emailing and calling district personnel informing them that D.L. had been harmed in the ACP classroom and that it was not safe for her to return to the ACP classroom, repeatedly requesting an IEP meeting, and "beg[ging]" the special education director "to find a safe place for [D.L.] so she can go back to school." However, the Hearing Officer's decision found no violations of the IDEA by OPS.

69. Further, the Hearing Officer's decision found that OPS did not violate the IDEA when the special education director, who was not present at D.L.'s IEP meeting, thereafter exercised a veto power that is not permitted under the IDEA and refused to carry out the placement decision made by D.L.'s IEP team once it had finally reconvened on October 9, 2023.

70. The Hearing Officer's decision found that OPS did not violate the IDEA when it refused to convene an IEP meeting in August 2024 so that D.L.'s IEP team could consider the recommendations contained in an independent education evaluation paid for by OPS in the Spring of 2024.

71. Plaintiffs bring this action seeking a reversal of the Hearing Officer's decision and relief for D.L. and her parents on the following grounds:

   a. D.L. was deprived of a FAPE during the Spring of 2023 due to the lack of appropriate behavioral supports and interventions in her IEP.

   b. OPS did not comply with required procedures in changing D.L.'s placement to the Alternative Curriculum Program, resulting in a substantive deprivation of FAPE in the LRE.

   c. The ACP Classroom was not an appropriate placement for D.L. because it was not based on her IEP or her disability-related needs and was harmful to her.

   d. D.L. was denied FAPE during her attendance in the ACP Classroom and in the following six weeks when OPS did not appropriately respond to Plaintiffs' repeated requests for an IEP meeting to change her educational placement so that she could safely attend school.

    e.    OPS improperly ignored D.L.'s October 2023 IEP Team's placement decision, resulting in a further FAPE denial.

    f.    OPS improperly continued to deny D.L.'s right to attend her stay-put IEP placement after Plaintiffs filed for due process, resulting in an additional FAPE denial.

    g.    OPS did not timely consider D.L.'s IEE, the recommendations of which were appropriate, thereby resulting in an additional FAPE denial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

a. Reverse the decision and order of the Hearing Officer dated April 3, 2025;

b. Declare that OPS deprived D.L. of a FAPE since the Spring semester of the 2022-2023 school year, and that OPS deprived Student of a FAPE in the Least Restrictive Environment through the entirety of the Fall semester of the 2023-2024 school year;

c. Declare and issue an order that D.L.'s appropriate educational placement in the least restrictive environment consists of appropriate instruction, services, and supports provided in the special education classroom at the public school closest to her home, Saddlebrook Elementary School, with some time spent in the general education environment with nondisabled peers;

d. Order OPS to fund an updated Functional Behavioral Assessment (FBA) and Behavioral Intervention Plan (BIP) to be performed by an independent evaluator mutually agreed upon by the parties to capture D.L.'s current behavioral needs;

e. Order OPS to provide D.L. with appropriate compensatory education services in her placement at Saddlebrook Elementary School, including at least 25 hours per week of intensive, appropriate behavioral instruction and interventions for 30 school weeks and at least 80 hours of one-on-one academic tutoring;

f. Declare that Plaintiffs are the prevailing party pursuant to 20 U.S.C. § 1415(i)(3)(b) and order OPS to pay Plaintiffs' reasonable attorney's fees and costs; and

g. Grant any other relief for Plaintiffs that this Court deems just and appropriate.

DATED this 17th day of June, 2025.

s/ Amy K. Bonn
Bar Number: 23624
Attorney for Plaintiffs
The Law Office of Amy K. Bonn, LLC
2805 Leigh Lane
Papillion, NE 68133
Telephone: (402) 387-7293
E-mail: amy@amybonnlaw.com